

FILED
CLERK, U.S. DISTRICT COURT

DEC 23 2008

CENTRAL DISTRICT OF CALIFORNIA
BY           DEPUTY

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IDT Netherlands BV, et al., <br><br> Plaintiff, <br><br> v. <br><br> West Coast Distribution Inc., <br><br> Defendants. | SACV 07-00024-JVS(ANx) <br><br> COURT'S FINDINGS OF FACT AND CONCLUSION OF LAW |

12-17-08 FINDINGS.txt

                                                              1

1
2            FINDINGS OF FACT AND CONCLUSIONS OF LAW
3
4            THE COURT:  As I indicated yesterday, I am going
5   to deliver my findings of fact and conclusions of law
6   orally.  I will direct that this portion of the transcript
7   be separately prepared, and I will sign it and file it as my
8   findings of fact and conclusions of law.
9            The parties to this lawsuit are IDT Netherlands
10  BV, which I will call IDT, and Union Telecard Alliance LLC,
11  which I will call UTA.  Also a party to this lawsuit is West
12  Coast Distribution, Inc., which I will call WCDI.
13           The focus of this lawsuit is a settlement
14  agreement signed by the parties to this lawsuit and several
15  other parties dated June 11, 2003.  That agreement has been
16  marked and received as Exhibit 1 in this lawsuit.  The
17  agreement provides for these basic obligations:  WCDI over a
18  24-month period obligates itself to purchase $9.6 million in
19  telephone calling cards.  IDT and UTA obligate to extend a
20  line of credit of $100,000.  IDT and UTA obligate themselves
21  during the term of the contract to provide what is styled as
22  a Level 4 discount rate.  There are other terms and
23  provisions in the agreement, but those are the most relevant
24  to this dispute.
25           During the evidence there was some questioning as

                SHARON SEFFENS, U.S. COURT REPORTER
0

12-17-08 FINDINGS.txt

2

16:50:42  1  to which party plaintiff performed which duties.  The record
2  does not establish a basis for holding that the performance
3  of any particular duty is personal to any party plaintiff
4  such that the duty could not be satisfied for purposes of
5  the contract by performance by the other party plaintiff or
6  by a performing third-party.  Said another way, I find
7  factually that so long as a duty was satisfied it did not
8  matter as to which party the duty was assigned, or which
9  party performed it, or even if a third-party performed it.
10          The parties have provided additional admitted
11  facts in their pretrial conference order which provide
12  background to this dispute, and I adopt those as part of my
13  findings of fact and conclusions of law.
14          IDT manufactures and distributes prepaid telephone
15  calling cards.  WCDI also manufactures and distributes
16  prepaid telephone calling cards.  IDT, WCDI, and other
17  parties became involved in a lawsuit captioned IDT
18  Netherlands BV versus Taraji, et al.; United States District
19  Court for the Central District of California; Case No.
20  02-5908-SJO(RZX), which the parties agreed to resolve by
21  entering into a settlement agreement on September 11, 2003.
22  That settlement agreement as I indicated is Exhibit 1 in
23  evidence.
24          Under the settlement agreement, WCDI agreed to
25  purchase $9,600,000 in telephone calling cards from IDT for

SHARON SEFFENS, U.S. COURT REPORTER

3

Page 2

12-17-08 FINDINGS.txt

16:53:00  1  the 24-month period beginning February 1, 2004.  Under the
          2  settlement agreement, IDT agreed to provide WCDI a Level 4
          3  discount rate on its purchase of the $9,600,000 in telephone
          4  calling cards during the period.
          5          Under the settlement agreement, WCDI agreed to pay
          6  IDT liquidated damages -- and that is the language to which
          7  the parties have agreed and the admitted fact -- liquidated
          8  damages in the amount of 10 percent for every dollar of the
          9  $9,600,000 in telephone calling cards that WCDI did not
         10  purchase from IDT during the period of the agreement.  WCDI
         11  purchased $185,516 in telephone cards from IDT during the
         12  period.
         13          I find as a factual matter that IDT and UTA
         14  performed their obligations under the agreement and were
         15  ready, willing, and able to perform all of their obligations
         16  during the entire 24-month period of the agreement.  I find
         17  that IDT and UTA did not engage in any material breach of
         18  the contract.  I find that IDT and UTA did not breach the
         19  contract by failing to offer a higher credit limit than the
         20  $100,000 specified in the contract.
         21          I find that when IDT and UTA and WCDI resolved
         22  their dispute in 2004 with regard to outstanding balances
         23  that WCDI continued to have available to it any unused
         24  portion of the $100,000 credit line without taking into
         25  account -- that is, not charging against the credit line the

SHARON SEFFENS, U.S. COURT REPORTER
☐

4

16:55:36  1  amount which IDT and UTA wrote off in that dispute.
          2          I find that IDT and UTA did not breach the

Page 3

12-17-08 FINDINGS.txt

3   contract by failing to offer Level 4 discounts at all times.
4   I find that the record is uncontradicted that
5   notwithstanding that without regard to the volume of actual
6   purchases WCDI was at all times extended Level 4 pricing.
7           I find that from time to time IDT and UTA offered
8   nonstandard pricing for various types of deals such as cash
9   or volume purchases.  I find that under the terms of the
10  settlement agreement, Exhibit 1, IDT and UTA were not
11  obligated to extend such nonstandard deals to WCDI.  I find
12  on this record that notwithstanding that fact IDT and UTA in
13  fact offered nonstandard deals to WCDI such as cash
14  purchases, but WCDI declined to take advantage of such
15  purchases.
16          I find that IDT and UTA did not breach the
17  contract by failing to offer support from UTA's West Coast
18  office.  I find that the contract provided no obligation
19  to provide such support.  Notwithstanding the fact the
20  record indicates that IDT and UTA referred WCDI to a
21  gentleman named Angel Garcia for business-to-business
22  support. I find that IDT and UTA did not breach the contract
23  by failing to provide exclusive cards or private label
24  cards.   I find that WCDI failed to provide the necessary
25  information for IDT and UTA to provide such cards, namely,

SHARON SEFFENS, U.S. COURT REPORTER

5

16:58:19  1   the desired discount and the desired destinations.
2           One example was offered of a price differential
3   between the prices offered roughly in March of 2004 to WCDI
4   and a customer named Maher Ismail.  The record indicates

Page 4

12-17-08 FINDINGS.txt

5  that with respect to a purchase order dated January 30,
6  2004, Exhibit 12, Bates No. 10174, that for the Aggressive
7  California card Ismail received a 30-percent discount off
8  face, and as reflected in Exhibit 5, WCDI received a
9  28-percent discount.  The same comparison with respect to
10 the Pay Less calling card reveals that Ismail received a
11 31-percent discount and WCDI received a 29-percent discount.
12      Mr. Forman was not aware of the specifics of this
13 particular transaction, but he pointed out that nonstandard
14 deals were often made at the end of the month and for large
15 amounts of purchase.  I note that the purchase order is
16 dated as of the end of January 2004 and that it is for a
17 large amount, namely, $390,000.
18      There was also a discussion of another comparison
19 between the price offered Ismail and the price offered WCDI.
20 That was a comparison between an invoice dated March 16,
21 2004, which indicated that -- an invoice dated April 13,
22 2004, which indicated for the Aggressive L.A. Card Ismail
23 received a 28-percent discount.  Exhibit 5 indicates that
24 that was the same rate of discount received by WCDI.
25      This comparison supports the conclusion that the

SHARON SEFFENS, U.S. COURT REPORTER

6

17:01:13  1  pricing to Ismail at Bates No. 10174 was a nonstandard
2  discount.  The pricing to Ismail in the comparison I just
3  indicated was a small amount, and it was in the middle of
4  the month and not a large volume.  The amount in 10178 was
5  $136,900.  This is the only evidence of a more favorable
6  pricing being offered to others on any basis than offered to

Page 5

12-17-08 FINDINGS.txt

7  WCDI.
8      I find that the fact that other distributors may
9  have been selling cards in the market at a price lower than
10 the price paid by WCDI is not evidence that others were
11 offered a more favorable discount than offered to WCDI under
12 the Level 4 discounting which it was contractually obligated
13 and entitled to receive.
14     The record establishes that the purchases were
15 $185,516 leaving a balance against the $9.6 million of
16 $9,414,484.  Under the terms of the liquidated damage
17 provision, that would constitute damages in the amount of
18 $941,448.
19     Before I move on to the issue of liquidated
20 damages, I want to address Exhibit 5.  I accept at face
21 value Mr. Forman's testimony with regard to the preparation
22 and meaning of the chart appearing in Exhibit 5 at Bates No.
23 10116.  I find that the column "should be" -- represents
24 percentage discounts on various types of cards which WCDI
25 contended that it was entitled to.  I do not find that that

SHARON SEFFENS, U.S. COURT REPORTER

7

17:04:00  1  column represents an admission that WCDI was in fact
2  entitled to those levels of discounts.
3      I find nothing in the computations which carry out
4  the logic of WCDI's position and quantify the differences if
5  WCDI's position were correct to undermine the basic
6  testimony given by Mr. Forman that the chart in Exhibit 5
7  represented a starting point in comparing two conflicting
8  decisions and not an admission that at any time IDT and UTA

Page 6

12-17-08 FINDINGS.txt

9  had failed to offer a Level 4 discount in which they
10 committed.
11         With respect to the issue of liquidated damages, I
12 find that a liquidated damage provision for 10 percent was
13 reasonable on the facts of this case and that WCDI had the
14 burden of proving that it was unreasonable and has not
15 carried that burden. When I get to the conclusions of law,
16 I will recite the authority for the proposition that it was
17 WCDI's burden.
18         I find that the following factors rendered
19 uncertain what the actual loss of profit to IDT and UTA
20 would be if there were a failure to perform the full
21 purchase of the $9.6 million in cards. There is
22 uncontroverted testimony that profitability varies by
23 distributor and varies on the basis of the strategy which a
24 distributor wishes to pursue. There was testimony that once
25 a distributor purchases a card IDT and UTA had no control

SHARON SEFFENS, U.S. COURT REPORTER

8

17:06:13  1  over the marketing strategy of the purchaser.
2          Another factor causing a variability in profit was
3  the actual use of the card. The profitability according to
4  the uncontroverted testimony could be different depending on
5  the time of day or day of the week. There was also
6  testimony that profitability could vary depending on the
7  length of calls. Fewer calls being made on a single card
8  would result in more setup charges. Longer calls on a card
9  would result in fewer cards on the call and fewer setup
10 charges, setup charges being one component of profitability.

12-17-08 FINDINGS.txt

11  There was testimony that there were differences in
12  profitability of exclusive versus nonexclusive cards.
13          I find for all these reasons it was reasonable for
14  the parties to adopt a liquidated damage provision of
15  10 percent.  On this record, given the uncertainties of
16  profitability, nothing has been proven to demonstrate that
17  the adopted 10-percent figure was unreasonable.  I believe
18  that that conclusion is confirmed by other testimony as to
19  profitability.
20          Mr. Forman testified that historically IDT and UTA
21  earned a profit percentage of 15 percent or more.  During
22  his testimony here, Mr. Forman testified that IDT enjoyed a
23  profit from 10 to 17 percent over various periods.  He
24  testified also as I understood the testimony that UTA
25  enjoyed a profitability of 5 to 8 percent.  In his

SHARON SEFFENS, U.S. COURT REPORTER

9

17:08:21  1  declaration, he testified that profitability varied from 5
2  to 15 percent.  These actual profit figures confirmed the
3  reasonableness of the selected level of liquidated damages.
4          If I were to conclude that the specified
5  liquidated damage figure was unreasonable, I would still
6  find that 10 percent represents a reasonable approximation
7  of damage sustained by IDT and UTA based on the evidence of
8  historical profitability based on the evidence at trial of
9  profitability of IDT and UTA.
10          I find as a result of the breach of contract by
11  WCDI that IDT and UTA are collectively entitled to damages
12  of $941,448.  I further find that that amount is liquidated

Page 8

12-17-08 FINDINGS.txt

13 for purposes of the prejudgment interest statute under the
14 California Civil Code such that the liquidated amount on a
15 contractual obligation invokes the obligation to pay
16 prejudgment interest.
17        I find that with respect to the affirmative
18 defenses not otherwise addressed in addressing the issues of
19 performance of a contract and whether there was a material
20 breach on the part of IDT and UTA have not been proven.
21 There is no evidence to support a claim that IDT and UTA
22 waived any of its rights under the agreement.  There is no
23 evidence upon which a reasonable fact-finder could make any
24 determination as to whether IDT and UTA could have mitigated
25 and, if so, what the amount of mitigation was.  That burden

SHARON SEFFENS, U.S. COURT REPORTER

10

17:10:58 1 was on the defendant, WCDI, and it did not carry its burden
2 to show the possibility or quantum of mitigation.
3        I find that with respect to all other affirmative
4 defenses and with respect to all claims asserted in the
5 counterclaim not otherwise dealt with by the recitation I
6 have made thus far fail for want of evidence.  There is no
7 evidence to support any of the claims asserted on the
8 counterclaim, and IDT and UTA are entitled to judgment in
9 their favor on the counterclaim.
10        With respect to conclusions of law, I find that
11 the Court has jurisdiction under the diversity statute, 28
12 United States Code, Section 1332(a).  I find that IDT and
13 UTA and WCDI entered into a binding and valid agreement.  I
14 find that WCDI breached the contract for the reasons I have

Page 9

12-17-08 FINDINGS.txt

15  stated in reciting the facts.
16        I find that IDT and UTA have failed to prove a
17  breach of the implied covenant. The evidence on this record
18  reveals nothing more than a breach of contract, and it does
19  not reveal any frustration of the rights of IDT and UTA
20  other than by the nonperformance of the obligation to
21  purchase $9.6 million in telephone credit cards.
22        I find that the law requires something more than
23  mere breach to establish breach of the covenant of good
24  faith and fair dealing and frustration of the contracting
25  party's right to the obligations that it's entitled to.

SHARON SEFFENS, U.S. COURT REPORTER

11

17:13:25  1        I find that IDT and UTA in fact suffered damage as
2  a result of WCDI's breach of the settlement agreement. I
3  find that the liquidated damage provision in the settlement
4  agreement is presumptively valid and reasonable. California
5  Civil Code Section 1671(b) provides that a liquidated damage
6  provision is reasonable unless proven to be unreasonable.
7        In Robert Lipshie & Co. versus Christian, 60
8  Cal.Rptr.2d 677, 681 (California Court of Appeal 1977), the
9  Court indicates that the burden is on the party challenging
10 a liquidated damage provision to establish that it is
11 unreasonable. I find that WCDI has not carried that burden
12 here. I find that the use of the label penalty in the
13 contract is not dispositive and that the Court should be and
14 is guided by the substance of the agreement.
15        For the reasons I have recited, notwithstanding
16 the label of penalty, the 10-percent damage figure is

Page 10

12-17-08 FINDINGS.txt

17  reasonable.  I find that IDT and UTA are entitled to recover
18  liquidated damages in the amount of $941,448.  I find that
19  because the contractual obligation is liquidated in an
20  amount certain that IDT and UTA are entitled to prejudgment
21  interest according to the California Civil Code.
22              I find that in as much as WCDI had the right and
23  the obligation to fulfill its purchase requirement up to and
24  including January 31, 2006, the last day of the 24-month
25  contract period, that prejudgment interest is to be computed

SHARON SEFFENS, U.S. COURT REPORTER

12

17:16:04  1  from February 1, 2006, which would be the first day
2  commencing after the term of the agreement.
3              If any finding of fact which I have made should be
4  deemed a conclusion of law, I so adopt it.  If any
5  conclusion of law which I have made should be deemed a
6  finding of fact, I so adopt it.
7              I make one additional finding.  I find that the
8  only instance of a price differential during a
9  contemporaneous period offered WCDI and any other customer
10  is in Exhibit 12 at Bates No. 10174.  Even if that were in
11  fact a price differential not explained by a special deal, I
12  find that that does not constitute a material breach of the
13  contract such as to vitiate the purchase obligation on the
14  part of WCDI.

Dated:   December 23, 2008

*/s/ James V. Selna*
James V. Selna
United States District Judge